UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
THE CHARTER OAK FIRE INSURANCE COMPANY,                           :
                                                                  :
                      Plaintiff,                                  :
                                                                  :       19-cv-4212 (LJL)
           -v-                                                    :
                                                                  :       OPINION AND ORDER
ZURICH AMERICAN INSURANCE COMPANY and                             :
SLADE INDUSTRIES, INC.                                            :
                                                                  :
                      Defendants.                                 :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _4/27/2020_

LEWIS J. LIMAN, United States District Judge:

Plaintiff, The Charter Oak Fire Insurance Company ("Charter Oak") moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on its claim that defendant Zurich American Insurance Company ("Zurich") has a duty to defend one of Charter Oak's insured entities in an underlying personal injury action and to reimburse Charter Oak for past defense costs and attorney's fees.  (Dkt. No. 26.)

## BACKGROUND

This case is about insurance coverage for a slip-and-fall accident.  The undisputed facts are as follows.  In December 2016, Josue Bulnes ("Bulnes" or "Claimant") slipped and injured himself while he was working on an elevator project at an apartment building in Manhattan. (Dkt. No. 28–8 ("Bulnes Compl.") ¶¶ 5–9).  At the time, he was employed by Slade Industries, Inc. ("Slade" or "Contractor"), which was under contract with the owner of the apartment building, ASB L3 72–76 Greene Street, LLC ("ASB" or "Owner").  Specifically, in June 2016, ASB entered into a contract with Slade for Slade to modernize one elevator.  (Dkt. No. 28–7 (the "Contract").)

1

After Bulnes was injured, he filed a lawsuit against ASB in New York State Supreme Court, Bronx County (the "Underlying Action"). (Dkt. No. 28–8.) He did not name Slade as a defendant. (*See id*. ¶ 7 (referencing Slade as a "non-party").) The Bulnes Complaint alleged that ASB's negligence had caused Bulnes to fall and sustain injuries. (*Id.* ¶¶ 9–10.) The Underlying Action is ongoing.

At issue in this Court is which insurer—Charter Oak or Zurich—should bear the cost of defending ASB in the Underlying Action.

Plaintiff Charter Oak insures ASB for commercial general liability. (*See* Dkt. Nos. 28–2, 28–3, 28–4, 28–5 (the "Charter Oak Policy").) But the Charter Oak Policy contains an "Excess Insurance" clause providing that coverage under the Charter Oak Policy "is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." (Dkt. No. 28–2 at 46.)

Defendant Zurich insures Slade, as a named insured, for commercial general liability. (Dkt. No. 28–6 (the "Zurich Policy"); Dkt. No. 31 ¶ 3.) The Zurich Policy includes two Additional Insured Endorsements.[1] (Dkt. No. 28–6 at 75, 80.) They name, as Additional Insureds: "only those persons or organizations where required by written contract." (*Id*. at 80.) Under the Endorsements, Additional Insured coverage applies "only with respect to liability for [injury] caused, in whole or in part, by [Slade's] acts or omissions or the acts or omissions of those acting on [Slade's] behalf." (*Id*. at 80.) The Additional Insured Endorsements further provide: "If coverage provided to the additional insured is required by a contract or agreement,

---

[1] While the two endorsements vary slightly in wording, those differences are not material to the instant dispute.

2

the insurance afforded to such additional insured will not be broader than that which [Slade is] required by the contract or agreement to provide for such additional insured." (*Id*.)

Section 17.1 of the Contract (between Slade and ASB) required Slade to purchase insurance coverage for ASB. (Dkt. No. 28–7 at 15.) Specifically, the Contract stated as follows:

> The Contractor shall cause the commercial liability coverage required by the Contract Documents to include: (1) the Owner . . . as [an] additional insured[] for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

(*Id.*)

Charter Oak argues that the Zurich Policy provides primary commercial liability coverage to ASB for the Underlying Action and that, therefore, Zurich has a duty to defend ASB.

By correspondence dated November 1, 2017, Charter Oak timely notified Zurich of the Underlying Action and demanded that Zurich defend ASB (as an Additional Insured) pursuant to the Zurich Policy.[2] (Dkt. No. 28–11.) Charter Oak repeated its demand in correspondences dated January 24, 2018, November 28, 2018, and February 8, 2019. (Dkt. Nos. 28–12, 28–13, 28–14.) By letter dated February 7, 2019, Zurich disclaimed coverage and refused to defend ASB in the Underlying Action. (Dkt. No. 28–15.)

Charter Oak filed this lawsuit on May 10, 2019. (Dkt. No. 2.) Zurich answered on July 10, 2019. (Dkt. No. 14.) On January 6, 2020, Charter Oak moved for summary judgment. (Dkt. No. 27.) Zurich filed its memorandum of law in opposition to summary judgment on February 6, 2020, and Charter Oak filed a reply memorandum of law on February 20, 2020. (Dkt. Nos. 30,

---

[2] Charter Oak also demanded indemnification. For reasons discussed below, the instant motion deals only with the duty to defend. Accordingly, this opinion does not address the history or merits of the indemnification issue.

32.)  The Court heard oral argument on the motion, telephonically, on April 22, 2020.  For the following reasons, Charter Oak's motion for summary judgment is granted.

## DISCUSSION

A.  <u>The Relevant Legal Standards</u>

The standards applicable to this case are well settled and have been applied numerous times in the insurance context.  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'"  *Id.* at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor."  *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

"An insurance agreement is subject to principles of contract interpretation."  *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015)).  "As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.'"  *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (quoting *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007)).  "[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent."  *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit &*

*Capital, Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (quotations omitted).  "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements."  *Id.* at 748.  "In that regard, a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'"  *Id.* (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 536 (N.Y. 1996).

### B.   Whether Zurich Has A Duty To Defend

The dispute between the parties is whether Zurich has a duty to defend ASB in the Underlying Action.  The parties agree that the language of the Contract and the Zurich Policy are clear and unambiguous but not surprisingly disagree on the interpretation of that language and its application to the Underlying Action.

Charter Oak argues that Zurich has a duty to defend because the Zurich Policy requires Zurich to indemnify ASB against any bodily injury claim "caused in whole or in part by Slade's acts or omissions."  (Dkt. No. 27 at 8.)  Charter Oak rejects Zurich's suggestion that the Zurich Policy incorporates any of the limitations on that coverage contained within the Contract.  (Oral Arg. Trans. at 4–5.)  Alternatively, Charter Oak argues that even if the Contract limits Zurich's defense obligation to claims caused in whole or in part by Slade's "negligent acts or omissions," Zurich would still have an obligation to defend because the Claimant's claims meet that description.  (*Id.* at 5.)

Zurich insists that its obligation to defend is limited to the Contract's obligation to cover claims "caused, in whole or in part, by Slade's negligent acts or omissions."  (Dkt. No. 30 at 6.)  And Zurich argues that the Claimant's claims do not meet that description.

The Court concludes that Zurich is right that the terms of the Contract are incorporated into the Zurich Policy but that Charter Oak is right that Zurich has a duty to defend the

5

Underlying Action under the Zurich Policy. To explain why Charter Oak is entitled to summary judgment, the Court addresses New York principles regarding the duty to defend, the language of the insurance contracts as filled in by the Contract, the language of the Bulnes Complaint, and the known facts relevant to the Underlying Action.

The New York law regarding the duty to defend is not in dispute. "In New York, an insurer's duty to defend is 'exceedingly broad.'" *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006)). "[A]n insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Id.*[3] The duty to defend has been described as a form of "litigation insurance." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1132 (N.Y. 2007). "An insurer may refuse to defend '*only if* it could be concluded as a matter of law that there is *no possible* factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (emphasis added) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)). It follows that, if there is either a possible factual or legal basis on which the insurer might eventually be obligated to indemnify, the insurer has a duty to defend.

New York courts look to two sources of information to determine whether there is a possible factual or legal basis for an obligation to defend. First, under the "four corners" rule, "[a]n insurer's duty to defend 'arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim.'" *Worth Const. Co. v. Admiral*

---

[3] In this sense, the duty to defend is "distinct from the duty to indemnify." *Euchner-USA, Inc.*, 754 F.3d at 140.

*Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (quoting *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997)).  Those allegations must be "liberally construed" and "[a]ny doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Euchner-USA, Inc.*, 754 F.3d at 141 (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 439 N.Y.S.2d 10, 12 (App. Div. 1st Dep't 1981)).  The duty to defend applies in "poorly or incompletely pleaded cases as well as those artfully drafted." *U.S. Fid. & Guar. Co. v. Executive Ins. Co.*, 893 F.2d 517, 519 (2d Cir. 1990) (quoting *Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 521 (N.Y. 1981)). "If the allegations of the complaint are ambiguous or incomplete, the insurer is nevertheless obligated to defend if the case is potentially within the coverage of the policy." *Id.*  "It is of no moment that . . . the named insured on the . . . policy[] was not named in the complaint." *City of New York v. Wausau Underwriters Ins. Co.*, 45 N.Y.S.3d 3, 7 (App. Div. 1st Dep't 2016).

Second, and importantly, because "the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured," *Fitzpatrick v. Am. Honda Co.*, 575 N.E.2d 90, 93 (N.Y. 1991), the Court is also obligated to examine the information possessed by the insurer. *See id.* at 93–94 ("[A] contrary rule making the terms of the complaint controlling would allow the insurer to construct a formal fortress of the third party's pleadings . . . thereby successfully ignoring true but unpleaded facts within its knowledge that require it . . . to conduct the . . . insured's defense.") (internal quotation marks omitted).  Thus, even when the complaint itself does not contain facts or law suggesting a possibility of coverage, the insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 93; *High Point*

*Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 98 (2d Cir. 2018) (same) (quoting *Fitzpatrick*, 575 N.E.2d at 93). "[D]eposition testimony" can provide an insurer "with knowledge of facts establishing a reasonable possibility of coverage." *Auriemma v. Biltmore Theatre, LLC*, 917 N.Y.S.2d 130, 139 (App. Div. 1st Dep't 2011).

Here, "the insurer's own contract with the insured" is the Zurich Policy. *Fitzpatrick*, 575 N.E.2d at 93. ASB is an "Additional Insured" under the Zurich Policy because Slade was contractually obligated to purchase insurance for ASB under the Contract. Specifically, under the Zurich Policy, Zurich agreed to insure ASB with "respect to liability for 'bodily injury' . . . caused, in whole in or in part . . . by . . . [Slade's] acts or omissions" or "[t]he acts or omissions of those acting on [Slade's] behalf." (Dkt. No. 28–6 at 75.)[4]

Zurich is correct that the Zurich Policy incorporates the Contract. The Zurich Policy states: "However . . . [i]f coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be *broader* than that which [Slade is] required by the contract or agreement to provide for such additional insured." (*Id.* (emphasis added).) In this case, "coverage provided to the additional insured is required by a contract or agreement"—namely, the Contract. (*Id.*) The Contract requires Slade to include ASB as an additional insured "for claims caused in whole or in part by [Slade's] negligent acts or omissions during [Slade's] operations." (Dkt. No. 28–7 at 15.) At oral argument, Charter Oak acknowledged that the Court must "read both contracts together" but insisted that "nothing between the two contracts . . . allows [the Contract] to narrow the scope of Zurich's duty [under

---

[4] In *Burlington*, the New York Court of Appeals interpreted similar language to limit coverage "to situations where the insured is the proximate cause of the injury." 79 N.E.3d at 482. Thus, this provision alone limits Zurich's coverage to accidents where Slade's acts or omissions were the proximate cause of the injury. If there is no reasonable possibility that the proximate cause of Claimant's injury was Slade's acts or omissions—*i.e.*, if the only reasonable possibility is that ASB's conduct caused the injury—Zurich would not be obligated to defend ASB.

8

the Zurich Policy]." (Oral Arg. Trans. at 4–5.) Charter Oak then conceded that the Contract could narrow the scope of Zurich's obligation—but only with respect to policy limits, not the type of claims that are covered. (*Id*. at 5.)

Charter Oak's position that the language of the Contract refers only to policy limits is inconsistent with the plain language of the Zurich Policy. The Zurich Policy states, "[T]he insurance afforded to [ASB] will not be *broader* than that which [Slade is] required by the contract or agreement to provide for [an] additional insured." (Dkt. No. 28–6 at 75.) (emphasis added). The ordinary understanding of the term "broader" relates to the scope of the coverage—how narrow or broad it is—and not to the amount of coverage or the policy limits. The Zurich Policy does not say that "the limit will not be higher than" nor that "the insurance will not be greater"—either of which might suggest a reference to the maximum dollar amount of coverage. In fact, where the Zurich Policy does discuss limits in Section III, it caps its coverage by saying "the *most* [Zurich] will pay." (Dkt. No. 28–6 at 25) (emphasis added). Rather, the disputed provision of the Zurich Policy says that the "insurance" will not be "broader," which is an all-encompassing description of the type of covered claims. Through that language, the Zurich Policy incorporated the restrictions on Additional Insured coverage that the Contract specified, and it imposed them on Zurich. In short, ASB's rights under the Zurich Policy are derivative of its rights under the Contract. It did not obtain under the Zurich Policy the right to enjoy insurance greater than the insurance it contracted for with Slade in the Slade–ASB Contract.

Thus, Zurich is obligated to defend ASB for "claims caused in whole or in part by [Slade's] negligent acts or omissions". (Dkt. No. 28–7 at 15.) That language however, does not get Zurich what it needs in this case. The Contract's use of the term "claims" is telling. That word denotes a "cause of action" or a legal claim. Claim, *Black's Law Dictionary* (11th ed.

9

2019), *available at* Westlaw. The Contract does not limit Zurich's coverage of ASB to *liability* caused by Slade's negligence. The Contract provision merely requires that Slade's negligent acts either "bring about or effect," *see* Cause, *Black's Law Dictionary* (11th ed. 2019), a lawsuit against ASB, even if those negligent acts are not specifically pled in the complaint (and indeed, even if Slade is not named in the complaint). Such a reading gives meaning to the contractual language. *See Nomura Home Equity Loan, Inc.*, 92 N.E.3d at 748 ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'") (quoting *Ronnen*, 671 N.E.2d at 536). ASB was concerned about lawsuits against it. It did not care about lawsuits pled solely against Slade and seeking to impose liability only against Slade. ASB was concerned about having to defend itself in lawsuits that were caused by Slade's negligence—regardless of whether Slade was named or pursued for damages. *See id.* ("[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent.").

The provision makes sense in light of at least two background principles of New York commercial law. As counsel explained at oral argument, there was no claim that an employee could have brought for Slade's negligence against Slade itself. (Oral Arg. Trans. at 25.) Under New York law, "[t]he sole and exclusive remedy of an employee against his employer for injuries in the course of employment" is "workers' compensation benefits." *Weiner v. City of New York*, 970 N.E.2d 427, 428 (N.Y. 2012) (quoting *Gonzales v. Armac Indus.*, 611 N.E.2d 261, 264 (N.Y. 1993)). "This precludes suits against an employer for injuries in the course of employment." *Id.* Moreover, under New York law, owners are generally not legally responsible for the negligence of an independent contractor in respondeat superior. *See Nelson v. E&M 2710 Clarendon LLC*, 12 N.Y.S.3d 51 (App. Div. 1st Dep't 2015) (building owner not liable for acts

10

of independent contractor). Reading the Contract to give meaning to its terms, ASB purchased something other than coverage for litigation costs and indemnification for liability based on Slade's negligence. It purchased "litigation insurance" against any claims brought about by, and injuries caused as a result of, Slade's negligence, regardless whether the underlying lawsuit named Slade or alleged that Slade was the proximate cause of the injury. Any other interpretation of the Contract would render Slade's promise to ASB essentially illusory.

The parties do not dispute the facts that have been uncovered in discovery in the Underlying Action or the language of the Bulnes Complaint. The Bulnes Complaint itself makes clear that Bulnes suffered the injury while working as an employee of Slade on the elevator project for Slade at the location at which Slade had contracted to provide services. (Dkt. No. 28–8 ¶¶ 5–10.) Moreover, the underlying facts, of which Zurich was aware (and is now aware), reasonably suggest that it was Slade's negligence—not any act or omission on the part of ASB—that gave rise to the claim. Claimant said that he was "essentially in charge" of the elevator project and had only one additional helper working under his direction. (Dkt. No. 29–1 at 18–19.) No facts have been offered suggesting that any other active participants were in the vicinity of the elevator project around the time of the accident. In addition, Claimant himself testified that the equipment he was carrying at the time of the accident could have leaked the oil upon which he slipped. (*Id*. at 48) ("[I]t could have been from the stuff we were bringing down.") He had never seen oil in that location before. (*Id.*) He also testified that he did not place any tarps on the stairs where the oil was located and that he did not clean up any oil. (*Id*. at 31–33, 48.) Finally, at the time of the fall, Claimant was carrying a large "random box" that he selected. (*Id*. at 40.) New York law requires only a "reasonable possibility" that the insurer will have an indemnification obligation, not a plausible case. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

11

(drawing distinction between possibility and plausibility). Putting all of these facts together, it is reasonably possible that Slade's conduct was negligent and gave rise to the claim against ASB. It is also reasonably possible that the bodily injury Bulnes suffered was caused by Slade's acts or omissions. Zurich has a duty to defend. *See Wausau Underwriters Ins. Co.*, 45 N.Y.S.3d at 9 (knowledge of maintenance log indicating insured contractor was responsible for maintaining allegedly defective traffic control device created reasonable possibility of contractor's negligence and duty to defend).

      C.  <u>Whether the Zurich Policy is Primary</u>

The final dispute between the parties relates to whether Zurich can share the costs of the duty to defend with Charter Oak or whether it must bear them exclusively. Charter Oak argues that its policy is excess and therefore that Zurich must pay the costs of the duty to defend to its policy limits before Charter Oak has to bear any of those costs. Zurich argues that even if the Zurich Policy creates a duty to defend, Charter Oak should also be considered to be "primary" and thus must share the costs of the duty to defend. Charter Oak has the better of the argument.

The parties once again agree on the relevant legal principles. Under New York law, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance clauses.'" *Sport Rock Int'l v. Am. Cas. Co.*, 878 N.Y.S.2d 339, 344 (App. Div. 1st Dep't 2009). The question is one of law for the Court. The parties agree that there is no ambiguity in the agreements that raise a genuine issue of material fact.

The "other insurance" clause of the Charter Oak Policy provides as follows: "This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all

12

that other insurance by the method described in c. below." (Dkt. No. 28–2 at 46.) In b, it explains that "[t]his insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." (*Id.*)

The "other insurance" clause of the Zurich Policy is in Section IV(4). (Dkt. No. 28–6 at 27.) Paragraphs 4.a. and 4.b.(1) were replaced by Section V of the General Liability Supplemental Coverage Endorsement. (Dkt. No. 28–6 at 41.)[5] Because it is important to the analysis, the Court quotes the provision in full, as amended:

> **4.  Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> **a.  Primary Insurance**
>
> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below. However, this insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:
>
> (1) The additional insured is a Named Insured under such other insurance; and
> (2) You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.
>
> Other insurance includes any type of self insurance or other mechanism by which an insured arranges for funding of its legal liabilities.
>
> **b.  Excess Insurance**
>
> (1) This insurance is excess over:
>
> (a) [inapplicable policies including property insurance for work, rental insurance, tenant insurance, vehicle insurance, and equipment insurance]

---

[5] Charter Oak's briefing appears to cite Section IV(4) rather than Section V. (*See* Dkt. No. 27 at 10.) The distinction in language does not make a difference to the Court's analysis.

(b) Any other primary insurance (including any deductible or self insurance portion thereof) available to the insured covering liability for damages arising out of the premises, operations, products, work or services for which the insured has been granted additional insured status either by policy provision or attachment of any endorsement.  Other primary insurance includes any type of self insurance or other mechanism by which an insured arranges for funding of its legal liabilities.

(c) Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", "claim" or "suit".  This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to an additional insured on a primary and non-contributory basis.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance show in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(Dkt. No. 28–6 at 27, 41–42.)

The critical dispute between the parties is whether the Zurich Policy is considered to be "primary." The parties do not dispute that if the Zurich Policy is primary, the Charter Oak Policy is excess. Reading language in Paragraph IV(a)(2) in isolation, Zurich argues that the Zurich Policy makes its insurance "primary to . . . any other insurance available to an additional insured provided that . . . [Slade is] required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured." It thus argues that the existence of a contract requiring Slade to obtain primary insurance is a condition precedent to Zurich's coverage being primary. Under its reading, if the agreement between Slade and the additional insured does not require Slade to obtain primary insurance for the additional insured, the insurance should be considered to be excess. Because the Contract did not on its face say anything about primary or excess, Zurich reasons that its coverage is not primary but excess.

Zurich's interpretation violates two cardinal rules of interpretation: (1) language must be read in context and (2) language must be read, where possible, to give meaning to each word in an agreement. *See 1070 Park Avenue Corp. v. Fireman's Fund Ins. Co.*, 313 F.Supp.3d 528, 540 (S.D.N.Y. 2018) (interpreting insurance contract by "[r]eading the policy . . . as a whole, rather than focusing on the singular word"); *Two Farms, Inc. v. Greenwich Ins. Co.*, 993 F.Supp.2d 353, 360 (S.D.N.Y. 2014) ("Courts interpreting contracts pursuant to New York law are required to give each word and phrase in a contract its plain meaning and avoid rendering the terms or provisions of a contract superfluous."). Here, those rules are easily followed. The sentence, portions of which Zurich relies upon, is contained in a portion of a paragraph that relates primarily to how coverage responsibility will be divided between two policies when both are primary. It begins by stating that the Zurich "insurance is primary except when Paragraph b"

15

applies. It then goes on to spell out the consequences of the Zurich coverage being primary: (1) Zurich's "obligations are not affected unless any of the other insurance is also primary"; and (2) if another insurance is primary, coverage will be shared according to a formula set forth in the Zurich Policy. The sentence upon which Zurich relies immediately follows the sentence that provides that coverage will be shared according to the method described in Paragraph c. Beginning as it does with the word "However," it is best understood to modify the immediately preceding sentence. So read, the sentence limits Zurich's rights to seek contribution against another primary policy when the Zurich policy is primary; the sentence does not itself address the question whether the Zurich policy is to be considered primary. The language is not a condition precedent to Zurich coverage being primary. It addresses the circumstance where Zurich's coverage is primary and its named insured has signed a contract requiring the named insured to obtain primary coverage. In that circumstance, Zurich cannot seek coverage against another insurance that is also primary.

But Charter Oak's policy is not primary here because Zurich is primary. The provision that makes that clear is the first sentence of Paragraph IV(4)(a). The first sentence of Paragraph IV(4)(a) states in unambiguous language: "This insurance is primary except when Paragraph b. below applies." Paragraph b then sets forth the few limited circumstances where the Zurich Policy is not to be considered primary. None of those circumstances is present here. The Charter Oak policy is not property insurance, rental insurance, tenant insurance, vehicle insurance, or equipment insurance; ASB does not have primary insurance available as an additional insured on another policy; and ASB is not named as additional insured status on another policy for the same occurrence, claim or suit. It thus follows that the Zurich Policy is

primary. It also follows that because the Zurich Policy is primary, then the Charter Oak policy is excess under the plain language of the Charter Oak Policy.

This is the interpretation that gives effect to all of the language within the Zurich Policy and that reads the language in context. The language of the Zurich Policy admits of only a single set of exceptions to the requirement that Zurich be primary – those "when paragraph b" applies. It also admits of a separate set of exceptions to the circumstances that Zurich can seek contribution against another policy that is primary. Those separate set of exceptions presume that the two policies are primary, they do not establish it. By conflating the two separate sets of exceptions, Zurich's interpretation would read out of the contract the language "except when Paragraph b below applies" and rewrite it to say something like, "This insurance is primary except when Paragraph b applies *or the circumstances set forth in (1) and (2) below are not satisfied.*" That is not, however, the contract Zurich signed. And the Court's obligation is to read and apply the contract Zurich agreed to and not to rewrite it. *See Adorable Coat Co., Inc. v. Connecticut Indem. Co.*, 556 N.Y.S.2d 37, 39 (App. Div. 1st Dep't 1990) ("A court may not create policy terms by implication or rewrite an insurance contract.").

## CONCLUSION

For the reasons stated, Charter Oak's motion for summary judgment is granted. The Clerk is respectfully directed to terminate Dkt. No. 26.

SO ORDERED.

Dated: April 27, 2020
       New York, New York                                  _____
                                                           LEWIS J. LIMAN
                                                           United States District Judge